119-1939 WC Simone Aleksy Appellant versus the Workers' Compensation Commission WK Heating Incorporated Athlete. Council are you on prepared? Online? Okay very good. Mr. Johnson No your audio is off Mr. Johnson. Still off. We're still off. It doesn't look like he's on. Can we send him a note? Yeah. Okay. We're trying to work this out here. Okay that's fine. We're going to send him a message. It looks like he's trying to work it. Can he hear? Can he hear us? Therese? Mr. Johnson can you hear us? You can just let us know. No I've been asking him that. I'm asking Therese. Oh my bad. It doesn't seem like he can hear us right now. We're sending him a message. Okay good. He's answering his cell phone. We don't have a microphone at all by his name which is he needs to add on his audio. Okay he's talking to someone. Judge we're still trying to communicate with him and get him to turn on his audio. We don't have that option here with his audio so he doesn't have it turned on at all. He's got to turn it on himself I believe. Right Therese? Right. Okay. Is it Ms. Oliarska? Yes your honor. Did I pronounce that correctly? Yes you did judge. Okay we're waiting for Mr. Johnson to get his audio connected. I noted your honor. I actually I am currently sending him a text message that he should turn it on. Okay we've been trying to call him so hopefully he'll get one or the other. He's answering the phone. Do you want to call him from your cell or do you want me to call him? Hi this is Crystal from the court. I'm not sure why you can't use the microphone here. I don't have the option to turn on the microphone. Can you hear us at all? Well you need to be able to hear it. Can we put him on speaker with his phone? Yeah maybe. Where is he gone? He left a picture. The other option might be for us to take the other cases unless he can figure out what's wrong with his. I think we can put him on speaker with his phone. Tell him to put his phone on speaker and pipe it to him by phone from our clerk. Okay Crystal is talking to him right now. She's trying to walk him through turning his audio on and we think maybe we're almost there. It says it's connecting to audio now. Okay it's looking good. You want computer? Well are you using a computer? We heard you before when you were talking with Therese. So somewhere that changed. What's clicked? All right now it's on. Yeah now his audio should be on. Now we need to ask him to unmute. Okay now we need to have you unmute. He will be on when that little icon goes off. Now he's on. He's off mute. Tell him to go sit down where he belongs. You need to get back where he's visible though. Well he went outside. There he's coming. Give me a chance. Okay Mr. Johnson. Yes. We can hear you. Don't fool around with anything. Yeah you're on video and audio now. All right sorry about that. Okay have we I'm trying to yes we've called the case. Okay Miss Oliarska you may proceed. Thank you. Good afternoon your honors. Counsel may it please the court. Natalia Oliarska on behalf of the plaintiff appellant Shimon Olexin. Your honors the discussion in this case can be limited to whether there was an employee-employer relationship. The burden of caring for the injured worker should be borne by the industry not by its casualties not by the public and these are the principles by which we should be guided today. Your honors what we have here is not a case of two equal players but one where the employer dictated the terms. The terms were have your own business, have workers employment there would have been no employment. The employment relationship here was defined by the employer by the defendant. The defendant created a business model that benefited solely him. The defendant hired workers labeled them as subcontractors required a business required insurance but otherwise treated them as employees thus benefiting from lower insurance premiums Miss Oliarska if I could just interject something to clarify. I mean as you all know the Illinois Supreme Court has provided a list of the various factors that a court should consider in determining whether the employee uh the alleged employee is actually an employee. How was Mr. Oleski paid? Was he paid hourly or how was he paid? Your honor the testimony of the plaintiff uh corroborated by the independent witness Pavel Sembawa was that he was paid hourly 14 to 20 per hour. So were there any paychecks that indicated that? Was there any withholding of any type or kind? There were paychecks your honor. The paychecks were plaintiff's exhibit which indicated payments from the defendant to the plaintiff in various sums. The defendant testified that he paid $500 per furnace but if we take a look at the objective evidence here at the paychecks 85 percent of those were not in increments of $500. So we have the testimony of plaintiff corroborated by the independent witness as well as objective evidence. Let me I have to ask a question just to clarify the checks that you're referring to according to what I'm looking at in the record the claimant's paychecks were written to claimant's business SO system not the claimant is that correct? That is correct your honor. And why is that? Your honor what did as I've before when the defendant hired workers he required two conditions. He required that they have their own business. He required that they have their own insurance and in doing so he shielded himself from liability. Let me ask you a question in regard to that. When was the when was SO System Inc incorporated in relation to when he started working for WK Heating? Yes the plaintiff's business your honor was incorporated in 2013. The plaintiff began working for the defendant in approximately May of 2014. However the fact that the plaintiff had his own business prior to the work relationship should not be used against them because this was one of the conditions precedent to employment. Well let's back up a second. The commission found it highly unusual and in common sense would cause you to question why the claimant would incorporate a business with no experience and no tools to perform the services. Yes your honor let's let's talk about the party's experience here. We have a defendant who had a business incorporated for approximately seven years who was familiar with the sister of workers compensation insurance. On the other hand the commission found that the plaintiff had prior experience in the HVAC industry. However your honor Justice Hudson there is no evidence in the record that plaintiff had prior experience and I can point your honors to two instances in the record where I believe the commission misreads the evidence. Number one at one point the plaintiff testified that the business of WK Heating was and I quote the same as I did heating and cooling. And here the plaintiff was referring to the type of work he was doing for WK Heating while already working for the defendant. And if we take a look at the transcript I think the context is very clear and the questioning goes as follows. Question Mr. Alexa at this time WK Heating was the company firm you were seeing checks correct? Answer yes. Question and what kind of company was this? Answer the same as I did heating and cooling. So here plaintiff was testifying to the type of work she was doing while already employed by the defendant while already receiving checks for them. And this is a factor that actually goes to showing an employee-employee relationship that the that they were in the same trade that the defendant's business encompassed that of the plaintiff. Well they could have been in the same trade and one of them could have been operating as an independent contractor. Let me ask you this as you know one of the hallmarks of whether somebody is an employee is whether or not the employer is deducting income tax withholding income tax social security is providing benefits vacation paid overtime all of that stuff are considered to be the hallmarks of an employer-employee relationship. None of those things took place here though however is that correct? That is correct Justice Hudson and for my reading of the case law the employment test is a multi-factor test that is very fact-specific that is dependent on the trade and the factor that your honor just mentioned with holdings is has been found to be of lesser value with per where per Robertson with factors such as direction and control with factors such as derelation between the workers and the employees trade being of most value. Can I ask you a question ma'am? Absolutely. WK Heating what business were they in? The HVAC trade. And how many employees did they have? Part of the defendant's testimony none. None so we've got WK Heating with no employees at all and what is he a furnace broker of some kind? He goes out and gets jobs from general contractors and then brokers the business out to subcontractors was there any evidence of that? You know if we were to for the defendant he had multiple job sites where he said employees he didn't do the work yet he had no employees on which he could rely on on a daily basis. So the business model that the defendant himself is testifying to is not plausible. What is happening is here that he's hiring these workers labels them as subs but relies on them like one would rely on employees and your honor justice Hudson you inquired about the the employment test. The most important factor per Robertson is direction and control and in this case in a trade like HVAC where blueprints and specifics of products are for the most part provided direction and control is shown when the employer obtains the blueprints, retains control of them, explains them to the worker and ensures their compliance. The defendant's the employer's observance and fulfillment of these requirements does not diminish the defendant's control over the employee's performance of the work but assures it and this is something that Robertson speaks to and here we have a defendant who had a contract with the general contractor who was the only one in communication with the general contractor benefited from that contract and did not pass it on to the plaintiff as would have been the case had plaintiff been a true sub. Your honors this isn't a case where the defendant said I have a job for you go ahead to the that address on the northwest side and have this job done in two weeks. This isn't a case where the defendant gave the plaintiff an order form and said go finish that job order whatever supply tools material as you may need. This is a case in which the defendant exercised for his own testimony significant direction and control over the employee's work. Ms. Oligarski let me ask you this what is your interpretation of the fact that the claimant filled out a policy application for workers compensation insurance for his own company S.O. Systems listed his name elected to withdraw himself from coverage on the act and then sign the application. Ms. Spilsky's testimony was that that's what the claimant did and she explained the consequences to him. So what is your interpretation of what happened there? Now can I ask you a question is whether he had workers compensation insurance with his corporation in any way relevant to this litigation? I think your honor uh uh answering justice Hudson first uh um I what I believe happened here is that the defendant required insurance so in order to obtain a job the plaintiff went ahead to the agent said I need workers compensation insurance um he asked for the cheapest option he was provided one and he obtained it in order to fulfill a condition precedent to employment and have um have a job. Um justice Hoffman uh moving on to your question um the um with respect to whether um the the worker was an employee or an independent contractor as I indicated is a multi-factor analysis. That wasn't the question I asked I asked whether this man had or did not have workers compensation insurance vis-a-vis his own corporation what relevance does that have as to whether he is or is not an employee of WK Heating? Let me clarify my answer uh justice Hoffman uh so per case law for early versus the industrial condition uh the industrial condition uh commission the fact that an employee uh that a worker has their own workers compensation insurance when it was required by the employer has been found to carry um less weight so it is a factor to consider justice Hoffman but because here this was done at the employer's insistence that factor carries lesser weight. But it has nothing to do nothing to do with the liability or lack thereof of WK Heating that's a matter as between himself and his own corporation as to whether he is entitled to benefits under his own policy has nothing whatever to do with WK Heating. The issue here he could not exempt himself these are softballs ma'am he could not exempt himself from coverage under the act vis-a-vis his relationship with WK Heating if he was in fact an employee could he uh no you're right he couldn't he could exempt himself as the owner or sole proprietor of a corporation that he owned under the act which he did but the fact of the matter is if he is an employee the fact that he exempted himself from coverage for his own corporation is totally irrelevant. I don't even know why we're talking about it. All right Mr. Logarski we can move on we've a lot of questions obviously but knowing the specific factors the Supreme Court said we must consider can you give us your strongest points of how what happened here fits into those tests those factors by the Supreme Court? Absolutely having already spoken to direction and control I'll move on as well as the method of payment I will move on to the ownership of the materials and equipment in this case the defendant himself testified that he provided the material and the job. Petitioners exhibit number 17 munches supply invoices do corroborate that as well the defendant was the one that chose and paid for these supplies. The plaintiff and the independent witness both testified that the defendant provided the job specific tools such as ladders and drills for HVAC installations. With respect to the schedule the defendant in this case had multiple job sites where he needed employees and he provided the locations for the work so what he did was he sent the workers where he needed them to be. He didn't call to inquire about who's available he didn't call to inquire as to what a specific worker would have to be paid for a specific job he sent them where he needed them. The plaintiff testified that he was required to work between 7 and 5 p.m. the independent witness Pavel Sambawa testified that he was required to start work between 7 and 8 a.m. Was he restricted from working for any other contractors or employers there was no testimony whether he was restricted the plaintiff did indicate that there was a one time uh two week period of time at which point he and uh he did go to work for another um for another company where the defendant was didn't have any jobs right so there was no evidence that the alleged employer in here prevented him from working or restricted him from working for anyone else was there uh that is correct there was no evidence to that effect um let me ask was there any testimony with regard to so system a um working at other locations prior to working with wk uh no no justice uh the plaintiff testified that he utilized um his company to do side jobs prior to working for wk um heating was there any elaboration on what those side jobs entailed i know there was no elaboration and there was no evidence um in the record to indicate that uh plaintiff's business um did any hvac work prior to plaintiff obtaining employment with the defendant so so we don't know what so did uh what what type of services they had rendered in any of the side jobs at all uh that is correct your time is up you'll have time and reply thank you thank you counsel counsel uh you may proceed in response mr john thank you uh may uh please the court can you hear me yes uh thank you good afternoon my name is les johnson trappley wk heating and i won't take up your time uh regurgitating the facts in my brief there is a lot of back and forth as there always is in these employer employee independent contractor cases as as you know um so i'll reserve all my time for any questions that you have i think the overview here of this is important so i'll briefly do that matt is an immigrant who spent seven years in the country he's not uneducated he had high school education he's all indications are he's smart and a driven individual who enjoyed the benefits of a true employment relationship when he was working for bellman sausage did the business and to the justice's point he did it before he began a relationship with wk he did do one job he testified to under the so uh in corporate umbrella before he connected with wk and i overall the structure of the relationship was clear from the beginning let me stop you for just a second you said that there was testimony and evidence about one job that he did as so prior to hooking up with wk what type of job was that you're correct he did not there is no evidence as to what exactly it was but he testified that he did one job okay uh johnson your opponent has emphasized the the control uh allegedly that the employer had controlled the manner in how um the claimant can perform his job duties met him at the job site provided him um with information called to check on him what's your position on whether or not on the control factor there's some control here i'm not i will concede that um obviously the arbitrator who was only under a 51 to 49 standard thought that there wasn't enough um and i i would just um point out as you know that the standard for plaintiffs in this case is much higher than the the degree of control though from from the evidence um is that uh he was this wk was more like a um a broker he'd go out he'd bid the jobs and then he didn't do them himself he is more of a he's a he owns the business there's no question that he was hands-on in terms of the results he used the blueprints provided by the general contractors he didn't fiddle with those and he certainly didn't direct um mr olexi in the nature and the manner of the work which is which in hvac is is not as is you have to determine where the pipes and the vents and things like that are going to go the fittings and that was done by powell sambala who uh was was not a an employee of wk as council admitted to one of your questions earlier today and there is no proof that this co-worker co-person uh sambala who who worked intimately with olexi and in fact trained him there's no evidence that he was an employee of wk so uh the phone calls the text i sambala yeah i think he was an independent contractor he formed his own uh corporation prior to connecting and having a relationship no no this powell whatever his name was yeah he he incorporated his own business as a as a pretty uh requisite to doing uh jobs with wk well maybe i didn't ask this question you brought in another individual who did something about pipes or something oh that's sambala that's paul sambala and it's also an individual who they did not bring in to testify marcin is well then we don't care about him uh he's not part of the record right right okay so let's forget him so so what do you have here you have a contract uh this uh systems contracts with wk is that correct yes okay and so you're saying that wk is a broker who just looks for companies to fulfill a contract the broker is made with a general contractor um well there's an informal agreement between the uh wk and his independent subs that's for there's nothing in writing what what business is wkn it's nhvac that's that's their business they are in the same business i'll concede that that's a consideration that before the court in these types of cases it's not only a consideration the supreme court says next to control it's the most important consideration so the question that i have is if wk has no employees how does it engage in the hvc business it engages with subcontractors so in other words in other words he has developed a method to avoid the workers compensation act by saying none of the people that do my work are my employees they're all independent contractors well i'll concede that and i'll go one further and that is he's operating a legitimate business model that's recognized by the irs recognized by the workers compensation commission of of independent contractor uh there are it's not always clear and and as clear as we would all like but that's a legitimate business model that he's employing to to he's not in a part he's not trying to job the workers comp system or any of the carriers or the net or the assigned risk pool because he's asking and requiring his subs and i'll use that word but alexi whether he's an employee you know he's requiring them to have valid workers compensation policies so that of course he's not of course he's not paying for those policies they are correct he's not but he you know if he were in a true employment relationship paying workers comp his cost of business would be higher and theoretically that may limit the number of employees he hires and there and that's one of the reasons why in general we don't mind independent contractor relationships as long as it's an arm's length agreement which in this case despite argument to the contrary by council this this is they're both sophisticated business people and they made an agreement an arm's length agreement and that's why you know that's why i believe that the commission their decision is supported by the evidence and the standard of overturning it at this point is it's not warranted whether whether this gentleman did any work at all on wk's jobs was up to wk was it not no i think uh there was no evidence to that there is absolutely no evidence and and i think there's no evidence of that wk had the contracts with the general contractors is that correct and then he went out and got these quote-unquote independent contractors to do the work is that correct so if he didn't want to give them any work he just didn't engage them to work in any of the jobs he'd contracted for is that right i'm not sure there's specific evidence to that but i i'll concede i mean come on come on if he's got the contracts and then he goes and gets an independent contractor to do the job what makes you think that the independent contractor could do the job without him doesn't make any sense well they're all his jobs wk's jobs i think any subcontractor in particular alexi could could opt out of any of those and in fact the uh there's no guarantee that it's not a question of opting out of them wk didn't have to give him the jobs right could have used anybody he wanted right right so to the extent that wk is in possession of all the rights to do the work and he picks who does the work and when they do the work then it occurs to me that's tantamount to the right to discharge if i don't like what you did you're not getting any more business that's the same thing as discharging someone that's the same that happens in a subcontractor a true uh you know without dispute subcontractor agreement if they're not as if the results are not up to par and uh the uh customer complains to wk he's not going to use the subcontractor again and what would you do if he was an employee you'd fire him he would fire him so it's it's you know i that's why i think the distinction between the two is difficult and not as the arbitrator pointed out not overly persuasive or probative the the other issue that you raise you seem to hang your head on the fact that he was a independent contractor he was called an independent country wk only used independent contractors but the cases tell us that the least important factor in a determination of employer employee relationship is the label that the parties put on it that's the least important factor i agree i mean there's absolutely no question in this case that there is some control you've conceded that and there's also absolutely no question in this case that the work that was performed in this case uh was it related to the general business of wk yeah the two most important factors there's no dispute about well it's a close case and it was at arbitration and i just my all of that i concede justice but the point that i have to come back to is that there was sufficient evidence for the arbitrator to make his findings there's no opposite result that's clearly apparent they're supporting evidence for the commission's decision well let's go to the support there's one consideration that you haven't addressed what what's what's the evidence on those two most important factors that support an independent contractor relationship i think that on direction and control do you mean yeah give me some examples of that what is well the alexi admits that there uh was not he wasn't the that wk was not directing the manner in which he did all the time um there's no question that any direction on the manner and the specifics of the job came from simbala who was has not been proven to be a an employee of wk um that goes back to my early early question who is this simbala he's another subcontractor okay so he's he's got his own business too right yes in fact he admitted uh in his testimony simbala did that he had done many other projects before connecting with wk and he is the one who got he and alexi the plaintiff he's the discussed earlier um the control the direct he took direction from the foreman of the job at this campbell project where he was hurt this um this other fellow who is definitely the who actually helped went to the store with him picked up the um the venting system furnace and was delivering it and it was actually helping alexi at the time of his injury he clearly was not an following the blueprints you know from the general contractor um wk's you know they make much of all the texts and phone calls but i'd point out kind of something i saw in the testimony this morning and that is alexi admitted that they were colleagues they're more than just boss and in his mind boss and employee they were colleagues friends they talked about many different things during all those text conversations and the phone calls so i don't think those the number of those or even the existence of them are are overly progressive so what we've got is a a situation where we've really got three quote independent businesses that are working on referrals to each other and assisting each other yeah yes that's that's that's what it is that's the independent contractor relationship that was set up by wk and agreed to by alexi can i can i ask you a question the furnaces that he was installing who paid for them no question wk either well there's no evidence that uh paid for them because ultimately who paid for them is in the contract between wk and the general contractor so whether there was reimbursement all right well let's try this who supplied the furnaces well well if you're trying yeah i'll say supply i say arrange he arranged for the furnaces to be picked up that was wk is that right wk arranged for that uh it's the foreman of the job assisted with it so yeah you're right that point is is what about tools tools uh there's a lot about tools i i can see that some of the tools absolutely came from wk such as the occasional welding um on the campbell street project the alexi plaintiff testified that he brought his own tools uh to that job and that was the tools of the the screwdriver and the hammer and stuff like that so i i would argue that the that the arbitrator is right some of the tools were provided by olexi in this campbell street job and some were were you may reply hello uh yes your honor yes okay okay um yes briefly i would like to make two points uh with a with respect to the manner of work the defendant himself testified that he instructed the plaintiff not only as to the result but as to the means to accomplish it specifically the defendant testified that once he was at job sites he showed plaintiff um what he had to do and that he explained the plans he testified that he directed plaintiff at work and that this was a common occurrence moreover the defendant testified that on the date of the accident he couldn't quite recall if he was at the job site or not but had he been there his purpose would have been to direct plaintiff on what he is supposed to do so we have direction and control we have the defendant instructing on on the very essence of hvac installation not only at the beginning of that relationship but on the date of the accident eight months into that relationship what's the essence what's the essence of hvac whatever that was you said the very essence of well i would say that i would say the blueprints your honor and in this case the defendant obtained the blueprints from the general retained control of those and per his own testimony explained them to the plaintiff but more than that your honor per the defendant's own testimony he showed the plaintiff how to do the work so again this wasn't the defendant saying you know uh go and install that furnace on that job and then just washed his hands of it he actually went to the job sites and told them what he had to do and how and one more example of that i'm sorry uh could your honor uh examples of him telling how this uh sno company was to do the work how wk heating was to do the work no no no no no you're trying to say wk was the employer how sno was to do the work sno is uh alleged to be an independent contractor by your opponent uh correct i apologize could you please rephrase the question yeah what is this how i like concrete stuff this conclusion statements well he wk said how to do the job sno what does that mean so uh specifically the how the defendant instructed plaintiff on where the furnace is needed to be located on where the events needed to go he instructed him on what the um what where the what type of supplies were supposed to be used what types of um saddles what types of fittings he was supposed to use and these are all uh piece materials supplies and equipment that the defendant himself chose as as is exemplified by the defendant's testimony as exemplified by the plaintiff's testimony as exemplified by plaintiff's the uh invoices from munch's supply which indicate the defendant was the one who chose and purchased these supplies and another indicator your honor of direction and control the defendant instructed plaintiff to occasionally go and pick up those supplies and to sign on his behalf and what we have in this case your honor is your honors is the testimony of plaintiff which was corroborated by the um independent witness that was the pavel simbawa who worked in the same manner as the plaintiff who testified that this is the way that the defendant ran his business and pavel simbawa corroborated plaintiff's testimony with respect to the um work location set by the defendant work hours set by the defendant um hourly pay as opposed to pay per job he testified as to the defendant's oversight while at the job site the defendant's oversight with respect to uh phone calls and text messages and focusing on those for a moment we have 97 texts and messages between the two parties in the 30-day period and the evidence shows that these were only work related per plaintiff's parade defendants per the um independent witnesses testimony so that third party simbala or whatever his name is he's got his own independent little business going too right absolutely your honor he testified that to the conditions precedent as set by the employer have your own business have your own workers compensation did anybody ask him if he had workers comp insurance um i believe he testified that he did your honor that he did okay so let me ask you on snl on your client when did he acquire his workers compensation uh policy in relation to when he started working for wk and so in or in order for him to begin work he had to have that policy and if we take a look at the workers compensation insurance policy it's dated may i don't recall the exact date of 2014 but this document was produced because the employer set that condition precedent to employment i see your time is up thank you counsel both for your arguments in this matter it will take be taken under advisement or written disposition